## DECEMBER TERM, 1843.

### AUSTIN P. PARKS *v.* JAMES J. PERSON, *et al.*

The return of satisfaction upon an execution, though false, so far extinguishes the lien of the judgment upon which the execution issued, that property of the defendant, in the execution sold *subsequent* to the return, would no longer be subject to it.

*Aliter*, if the false return is made after sale of property of the defendants. In such case, on the return being vacated, the lien would still exist on the property previously sold.

It is wholly irregular to set aside a return of satisfaction upon an execution, in a court of law, without notice, *at least*, to the defendant in the execution ; such a proceeding is absolutely void.

Whether, where the vacating a false return upon an execution will affect the rights of subsequent purchasers from the defendant in the execution, these subsequent purchasers are entitled to notice of the proceedings. *Quære.*

THE bill in this case charges, that *some time prior to the* 18*th of April,* 1840, John M. Scott sold a negro woman named Eliza, to William H. Browning, who, *on that day,* sold her to Elizabeth Parks, mother of complainant, and administratrix of Thomas Parks, deceased, his father. That said Elizabeth held said slave as the property of the estate of Thomas Parks until March, 1843, when, in a division of the estate, said negro was allotted to complainant. That on the 22d of July last, she was levied upon and taken into possession by the sheriff of Claiborne county, under color of an execution against said Scott and others, in favor of Wells and Person, for the use of George Morton. A copy of this execution is exhibited with the bill.

That *prior to said* 18*th April,* 1840, said Wells and Person had obtained two judgments against said Scott, on forthcoming bonds ; one for $359·03, and the other for $509·30, upon both of which executions had *at that time* been issued and levied upon property sufficient to satisfy them, which property *was not sold by* the officer, *but was released by him,* and said two executions were, on the 20th and 21st of May, 1840, fully paid by Scott. Copies of the said executions and returns are also exhibited with the bill.

That Person (Wells being dead), after the 21st of May, 1840, by proceedings in the Circuit Court of Claiborne county, to which

neither Browning nor Mrs. Parks were parties, and of which they had no notice, caused the return of satisfaction to be set aside and annulled, and has taken out other executions for the same debt, which last executions were also levied upon property of said Scott sufficient to satisfy them. Copies of these executions are made exhibits.

That Person, for the use of Morton, on the 18th July, 1843, caused the execution first referred to, to be levied on the negro Eliza, and threatens to have her sold, and also threatens to have an execution on the other judgment levied on her, unless restrained. That the negro is of peculiar value, and complainant is advised that he will lose his redress against Browning, if he permits her to be sold. Denies that, at the time of the purchase from Scott, he, or any person under whom he claims, had any notice of the lien of said judgments on the negro.

Prayer for injunction, to prevent the sale of the negro, and for general relief.

The answer of Person shows the recovery of the judgments against Scott on the 29th May, 1839, and the forfeiture of the forthcoming bonds on the fourth Monday of November, 1839, and exhibits transcripts accordingly.

States that Wells is dead, that Morton (the usee) has now no interest in the judgments which belong to Person, and that they are unsatisfied except as to $325, credited on the one for $359·03.

Admits that Scott owned Eliza, *prior to* 18th *April,* 1840, and states that he owned her prior to the fourth Monday of November, 1839; admits that he sold her to Browning *prior to* 18th *April,* 1840, and charges that in fact he sold her to Browning *prior to* 20th *February,* 1840 (the date of the pretended levy), and charges that Browning and Mrs. Parks had full notice of the lien of the judgments, the same being of record.

Denies that the sheriff, even in fact, made any levies by virtue of executions returnable to the May term, 1840; that the entry dated February 20, 1840, purporting to be a levy on *John, Rose,* and *Eliza,* was made by the sheriff upon the information of Scott, without *seeing* John or Rose, and without seizing or having any of them in his possession, or under his control. That he *saw*

Eliza, but did not seize her, and that she was at that time in possession of Browning, who had previously purchased her from Scott.

It states, that these pretended levies were released by the sheriff before the return of the writs, and the executions returned " satisfied." That these returns were false, fraudulent, and collusive, and as such were set aside by the Court on motion, and exhibits the orders setting them aside.

It states, that said negro Eliza, named in said pretended levies dated February 20, 1840, is the very same woman now levied on, and claimed by complainant.

Admits that, after the returns of satisfaction were set aside as aforesaid, executions were taken out, and levied on land, which was appraised, and the sale adjourned twelve months under the valuation law ; but he states that after the expiration of the adjournment, writs of *venditioni exponas* were issued, and the land sold for $325, which was applied to the judgment of $359·03, and due return thereof made before the issuing of the execution now enjoined.

An affidavit of W. G. Renaud, the deputy, sheriff, was filed, and sustains the allegations of the answer, that no levy was in fact made. It states that Eliza, on the 20th of February, 1840, was in Browning's possession, and that he had, previous to that time, purchased her of Scott in payment of an old debt. It also states that the Eliza then attempted to be levied on, is the same negro now in controversy in this cause.

The case was submitted on motion to dissolve the injunction upon the bill, answer of Person, exhibits, affidavit, &c.

*W. M. Randolph,* in behalf of the bill.

*H. T. Ellet,* for defendant Person.

It appears from the papers, that at May term, 1839, of Claiborne Circuit Court, Wells and Person recovered two judgments against John M. Scott, *et al.,* one for $509·86, and the other for $359·03, both of which were bonded, and the bonds forfeited on the fourth Monday of November, 1839. The bill states that *prior to the* 18*th April,* 1840, J. M. Scott sold the negro Eliza to W. H. Browning, and that *prior to said* 18*th of April,* 1840, the

executions on said forfeited bonds, had been levied on property sufficient to satisfy them, and that the property thus levied on was afterwards released by the sheriff before the return of the executions ; and the executions returned *satisfied* to May term, 1840.

Upon these allegations the point is made by complainant, who claims under Browning, that Browning purchased the negro in controversy, free from the lien of the judgments of Wells and Person. This position is denied.

It is undoubtedly settled, that where the sheriff has taken the defendant's goods, *to the amount of the sum directed to be levied,* the defendant is discharged.   2 Tidd's Pr. 1059 ; 2 Ld. Raymd. 1072 ; 1 Salk. 322 ; Bac. Abr. Execution D. ; 3 Howard, 417 ; 12 Johns. 207.

And the sheriff must *return* the *value of the goods,* &c., taken.   2 Tidd's Pr. 1058 ; 1 Sellon's Pr. 530.

This is, however, a mere *quasi* satisfaction, technical and fictitious in its character.   The defendant may avail himself of it, but it is no satisfaction as regards *third persons.*   3 Howard, 417.

If goods are seized on a *fi. fa. sufficient to satisfy it,* the defendant is discharged, though the sheriff waste the goods, or misapply the money.   4 Mass. R. 403.

Indeed, all the authorities show that the levy must be sufficient to satisfy the execution, and that fact must be returned by the sheriff.

It is also settled, that if the plaintiff releases the levy, it discharges the debt, but if the sheriff releases it, and restores the property to the defendant, it is no satisfaction.

In the present case the sheriff did not return the *value,* but simply made a general levy ; see exhibits B and C ; and the bill itself alleges that before the return of the writ, the *sheriff released the levy,* and satisfied the executions.   Up to the time of the actual return of the writ, the proceedings of the sheriff were *in fieri,* and nothing is conclusive but the return itself.

But if the levy does have the effect to discharge, for the time being, all the other property of the defendant from the operation of the judgment lien, it will follow that the sheriff must in all cases be answerable for the sufficiency of the levy.   " He cannot make

a second levy," is the language of the cases ; 12 Johns. 207 ; 2 Tidd 1050. But this is not so ; for though Lord Holt, in *Clerke* v. *Withers*, 2 Ld. Raym. 1072, held the sheriff bound by his return of value, such is not the law. It is no estoppel, but the sheriff may sell the goods for less, and the judgment, even against the original defendant, is not considered satisfied any further than the amount of the proceeds of the sale. 1 Sellon's Pr. 529 ; Cro. Eliz. 598 ; Cro. Jac. 515 ; *Denton* v. *Livingston,* 9 Johns. 96.

It would happen, therefore, in case a sheriff should make an inadequate levy, and the defendant, pending the levy, should sell the residue of his property, that the plaintiff, without any fault of his own, might lose his whole debt, notwithstanding his judgment is a lien upon all the property of the defendant.

This consequence might follow in England, New York, and elsewhere, where the judgment is not a lien on the goods. There it is the *execution* alone that binds the property, and it binds nothing but what is levied upon and inventoried on or before the return day. All the rest of defendant's property is exempt, and purchasers may buy with safety. 17 Johns. 274.

These principles, however, cannot apply in this State, where the judgment itself constitutes a general and permanent lien on all the property of the defendant, and which must subsist until *actual* satisfaction, unless destroyed by the act of the party. If an execution upon the elder judgment is levied upon property which the sheriff thinks will probably satisfy it, can it be that a younger execution can come in and sweep away all the residue of the property, or that the defendant can sell it off, put the money in his pocket, and set his creditors at defiance ?

But, secondly. Browning, at the time of his purchase of the negro Eliza, had full notice, from the records, of the lien of the plaintiff's two judgments upon her. The bill alleges that he purchased her *some time prior to the* 18*th April,* 1840, without showing *when,* and that the executions were levied *prior to said* 18*th April.* It appears that the levy is dated *February* 20, 1840, but there is no allegation that Browning purchased *after that date.* The complainant's own showing is therefore defective in its most material

point, and it is difficult to escape the conviction that the bill is so drawn on purpose. The answer alleges that, in fact, Browning purchased *prior to the 20th February,* before there was any pretence of a levy ; and the affidavit of W. G. Renaud, the deputy sheriff (submitted on this motion), proves the fact conclusively, and completely destroys every vestige of complainant's equity.

But if the purchase had been subsequent to the levy, still the levy was not of record in the clerk's office, until the *fourth Monday of May,* the return day, more than a month after the 18th of April. The law can recognize no resort for information but the clerk's office. Parties are chargeable with notice of what appears there of record, and they cannot change their rights or liabilities by inquiries of the sheriff, or of third persons. Suppose the sheriff had told Browning that he had received the money on the executions, would that have destroyed the plaintiff's lien, in case the information was false ?

In fact this levy never became of record, at all, for the bill alleges that the sheriff released it, and it appears that he afterwards returned the executions " *satisfied.*"

If the levy had been of record, and had been consulted by Browning before he bought the negro, it would not justify any inference that the plaintiff's judgments were satisfied. It has been shown already that a *seizure to the value* must be *returned by the sheriff,* to warrant this technical inference ; that such an inference is only drawn in favor of the *defendant himself,* and that it only prevails until a sale of the property, and then only for the amount of the sale. But here is no return of the value, nor of any fact from which the value could be estimated. Private opinion cannot be made to defeat the public records. The property might be subject to older incumbrances, or not liable to the executions at all. Indeed, all the information the levy could have given, is, that a proceeding had been had which *might possibly result* in the satisfaction of the judgments.

The release of the levy by the sheriff was " not in the course of his official duty," was improper and unauthorized, and cannot prejudice the rights of the plaintiffs. 9 Johns. 263 ; 1 Cowen, 46 ; 4 ib. 553 ; 6 ib. 465.

The answer denies that any levy ever was in fact made, and the deposition of the deputy sheriff fully proves that the negroes John, Rose, and Eliza never were seen or seized by the sheriff, or brought into his possession, or under his control, without which the levy is void.

But if the levy were good in every respect, still the complainant must fail, because the answer states, and the deposition of the deputy sheriff proves, that the negro Eliza, named in the levy, is the very same negro purchased by Browning, and now in controversy. It certainly cannot be pretended that a levy on property discharges that very property from the lien of the judgment, so that purchasers may buy with impunity.

It is true, the sheriff returned these executions to May term, 1840, satisfied; but the returns were false, fraudulent, and collusive, and, as such, were set aside by the Court (see defendant's exhibit 2). Mrs. Parks was not a party to the executions, nor interested in them, and was not entitled to notice of the motion. Browning's purchase was made before the returns, and was not affected by them.

The bill alleges that subsequent executions are levied on property sufficient to satisfy them, but it appears from the answer, and exhibits No. 3 and 4, that the property levied on was sold for $325, and the levies entirely disposed of, before the execution now enjoined was issued.

It is therefore submitted that the injunction ought to be dissolved, and an order made directing the negro to be restored to the sheriff for sale under the execution.

CHANCELLOR. The substance of this case is this. Scott, who was originally the owner of a negro woman slave, named Eliza, the subject of the present controversy, sold her to Browning, who, in turn sold her to E. Parks, the mother of the complainant, and administratrix of the estate of her deceased father; E. Parks purchased the negro on account of the estate, and the complainant, as one of the distributees of her deceased father, claims title to the woman, who was allotted to her in the distribution of the estate.

It seems that when Scott sold the woman to Browning, there was a judgment in favor of Person and Wells, against Scott, upon which an execution was then in the hands of the sheriff, which was levied upon three negroes of Scott, the levy afterwards released, and the execution returned satisfied by the sheriff. The levy, the release, and the return, all took place after Scott's sale to Browning.

At a term of the Circuit Court, to which the execution was returned, subsequently held, the return of satisfaction was vacated upon the ground that it was a false return, and that, in fact, no satisfaction had been made. Another execution issued, was levied on the negro woman Eliza, and the injunction was granted in this case, at the instance of the complainant, to stay the sale.

I should have no difficulty in decreeing a perpetual injunction in this case, notwithstanding the false return, if the record in the Circuit Court had disclosed to the complainant, or to the person from whom she derives her title, that state of things which afterwards existed.

If when Browning purchased, the execution then in the sheriff's hands had been previously returned as levied, that levy released and a satisfaction entered, even though all the returns were false, I could have no hesitation in saying, that the lien of the judgment in favor of Person and Wells would have been so extinguished, that the property sold would not have been affected by it.

But these entries were made afterwards, and cannot affect, as they were false, a purchase made prior to their existence. The complainant bought subject to the lien of the judgment ; that lien has not been legally extinguished ; and if this were the only ground for obtaining the injunction, I should dissolve it.

But there is another point entitled to weight. It is this. The return of the sheriff is *primâ facie* evidence of satisfaction, and standing alone must be taken to be true ; the record of the case in the Circuit Court does not show any notice that the motion would be there made, to have the return of satisfaction set aside as false, either to the sheriff, the defendant in the execution, or the complainant. So far as the record shows it was purely *ex parte*, at the instance and application of the plaintiff in the judgment at law.

It was wholly irregular to entertain such a motion without notice at least to the defendant in the execution. It was out of the power of the Circuit Court to do so ; the whole proceeding was absolutely void, a mere nullity ; and this Court must protect the complainant from being injured by it.

I strongly incline to the opinion, that where a sheriff's return is sought to be set aside so as to affect the rights of purchasers of property, from the defendant in the execution, and subject it to the lien of the judgment under which the motion is made, notice of the motion must be given to him who holds and claims the property, which may thereby be subjected to the operation and lien of the judgment. I give, however, no opinion on this point.

The motion is overruled.